IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOSE LUIS PIMENTAL, | : | CRIMINAL NO. |
|    Movant, | : | 1:05-CR-0477-29 -CC-GGB |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:09-CV-3194-CC-GGB |
| UNITED STATES OF AMERICA, | : | |
|    Respondent. | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |

## FINAL REPORT AND RECOMMENDATION

Jose Luis Pimental, ("Pimental", Movant", or "Defendant") has filed a motion to vacate sentence under 28 U.S.C. § 2255. [Doc. 1468]. Presently before the Court for consideration are: Movant's § 2255 motion to vacate [Doc. 1468]; the United States of America's (hereinafter "Government's") response to the motion to vacate [Doc. 1477]; and Movant's Reply [Doc. 1481].

### I.   BACKGROUND

On June 26, 2007, Pimental pleaded guilty to Count One of an indictment that charged him with conspiring (1) to possess with the intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(ii), and (2) to possess with the intent to distribute at least five hundred grams of a mixture and substance containing

a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(viii), all in violation of 21 U.S.C. § 846. (Docs. 875, 677).

Pimental's plea agreement with the government included a provision wherein he waived his right to appeal his sentence or collaterally attack it, except in the event of an upward departure from the otherwise applicable sentencing guideline range, or if the government appealed. The terms of the agreement were as follows:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the defendant voluntarily and expressly waives the right to appeal his sentence and the right to collaterally attack his sentence in any post-conviction proceeding on any ground, except that the defendant may file a direct appeal of an upward departure from the otherwise applicable sentencing guideline range. The defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government appeals the sentence imposed, the defendant may also file a direct appeal of his sentence.

(Doc. 875 at ¶ 12). In addition to the plea agreement, Pimental signed a separate statement that "I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my sentence or challenging my sentence in any post-conviction proceeding." (Doc. 875 at 13).

During the plea hearing, the Court explained to Pimental (and his co-defendant) that their plea agreement contained an appeal waiver, including an explicit waiver of their Section 2255 rights:

2

> THE COURT: You both understand that you waive your right to appeal your conviction and sentence unless the sentence is an upward departure from the applicable custody guideline range; or if the Government appeals, then you will be free to appeal. You will only be able to appeal your sentences in those two instances. Do you both understand that? Ms. Rea?
>
> DEFENDANT ROJAS-REA: Yes.
>
> THE COURT: Mr. Pimental?
>
> DEFENDANT PIMENTAL: Yes.
>
> THE COURT: Do you both also understand that you give up your right to collaterally attack your sentence in a postjudgment proceeding pursuant to Section 2255? Mr. Pimental?
>
> DEFENDANT PIMENTAL: Yes.

(Doc. 1385 at 20-21).

In addition, the Court questioned Pimental concerning the voluntariness of his guilty plea, and Pimental denied that he had been threatened or coerced into taking the plea. (Id. at 16-17). Pimental confirmed that he had had sufficient time to review the plea with his attorney and was satisfied with his attorney's representation. (Id. at 28). Pimental testified that he was pleading freely and voluntarily of his own free will. (Id. at 22).

3

In its factual basis, the government proffered that if the case proceeded to trial, co-defendants would testify that they delivered methamphetamine to Pimental and that Pimental picked up and received drug proceeds. The government further proffered that Pimental was involved in multiple transactions each of which involved in excess of 500 grams or the proceeds of over 500 grams of methamphetamine. (Id. at 30). Pimental and his counsel stated that they were in "substantial agreement" with the government's proffered factual basis. (Id. at 32). Through counsel, Pimental admitted that drugs were found in his house at the time of his arrest, and that on three prior occasions he accompanied co-conspirators to pick up sums of money that he knew were drug proceeds. Pimental declined to say anything when given the opportunity to speak about the facts. (Id.).

The Court concluded that there was a sufficient factual basis for Pimental's plea, and stated that Pimental's plea "[is] free of any coercive influence of any kind, is voluntarily made with full knowledge of the charges against [him] and the consequences of [his] plea; that [he is] competent to understand the proceedings and to enter a knowing plea; that there have been no promises of any kind made to [him] by anyone except as incorporated in the plea agreement set out in open court." (Id. at 33). Accordingly, the Court accepted the plea. (Id.)

4

At sentencing, the government represented that at least eight pounds of methamphetamine were distributed by Pimental from his house, and that 294 grams of methamphetamine were recovered from his house when he was arrested. (Doc. 1386 at 6, 11, 20, 28). The Court found that Pimental was responsible for 8 pounds of methamphetamine plus 294 grams of methamphetamine (actual) and, based upon the Federal Sentencing Guidelines, applied a corresponding base offense level of 36. (Doc. 1386 at 30-31). After the Court subtracted five points for safety valve and acceptance of responsibility, Pimental's offense level was 31. (Id. at 31-32). Based on the final offense level and Pimental's criminal history category of I, the Court concluded that the applicable sentencing range in Pimental's case was 108 to 135 months. (Id. at 32).

On September 19, 2008, the Court sentenced Pimental to 108 months of imprisonment, five years of supervised release and a $100 special assessment. (Doc. 1186). Pimental then filed a direct appeal, which was dismissed by the Eleventh Circuit on July 1, 2009, based on Pimental's valid waiver of appeal. (Doc. 1450). Pimental filed the pending Section 2255 motion on November 13, 2009. (Doc. 1468).

Additional facts are discussed in context below.

5

## II. STANDARD OF REVIEW

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." Hill v. United States, 368 U.S. 424, 426-27 (1962); see generally United States v. Hayman, 342 U.S. 205 (1952). "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Pimental must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Bowen v. Johnston, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see Long v. United States, 883 F.2d 966, 968 (11th Cir. 1989). Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief.

United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988). As discussed below, the motion and record of the case conclusively show that Pimental is not entitled to relief or to an evidentiary hearing.

### III. DISCUSSION

Pimental's petition is based on his contention that he believed that he would be sentenced (and should have been sentenced) based only on the 294 grams of methamphetamine found in his house at the time of his arrest for which he admitted responsibility. He raises the following three grounds: (1) ineffective assistance of trial counsel, (2) ineffective assistance of appellate counsel, and (3) his sentence is unreasonable.

#### A. Ineffective Assistance of Trial Counsel

Pimental was represented during his plea and sentencing by attorney Patrick Powell. According to Pimental, Powell was ineffective because he did not make a sufficient effort to prevent the Court from attributing eight pounds of methamphetamine to him in addition to the 294 grams for which he was willing to accept responsibility. Specifically, Pimental alleges that Powell was ineffective because (1) he failed to object to the use of unreliable evidence in Pimental's pre-sentence report ("PSR") and at the sentencing hearing (Def.'s Br. at 10, 12-13);

7

(2) he failed to object "specifically and substantively" to Pimental's sentence enhancement based on the additional eight pounds of methamphetamine attributed to him (Def.'s Br. at 10, 16); and (3) he failed to investigate, cross-examine or challenge the sufficiency of the evidence presented in the PSR and at the sentencing hearing (Def.'s Br. at 10, 12-13, 16).

Pimental's claims relating to his sentencing are barred by his knowing and voluntary waiver of the right to collaterally attack his sentence.

A defendant who enters into a plea agreement may waive his right to appeal or collaterally challenge his sentence, and the waiver will be enforced if it is made knowingly and voluntarily. See United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001), cert. denied, 536 U.S. 961 (2002); United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). "One of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" Bushert, 997 F.2d at 1350 (quoting United States v. Rutan, 956 F.2d 827, 830 (8th Cir. 1992)). In order to prevail in an argument to enforce a waiver, the government must show that either "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11

8

[plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Bushert, 997 F.2d at 1351.

In this case, the Court specifically questioned Pimental during the plea colloquy regarding the specifics of his sentence appeal waiver and determined that Pimental had entered into the written plea agreement – which included the appeal waiver – knowingly and voluntarily. In addition, both the language of the written plea agreement and the record of the Court's inquiry indicate that Pimental understood that he was waiving a collateral attack on his sentence. Under these circumstances, Pimental's sentence-appeal waiver precludes a Section 2255 claim based on ineffective assistance of counsel at sentencing. Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005) (holding that, where defendant had knowingly and voluntarily waived his right to collaterally attack his sentence, his Section 2255 claims relating to the effectiveness of counsel at sentencing were barred).

Pimental also alleges that his counsel was ineffective because he represented that Pimental would be sentenced based on only 294 grams of methamphetamine and Pimental entered into the plea agreement based on that representation.

Pimental's appeal waiver does not preclude him from challenging his counsel's effectiveness with regard to the validity of his plea agreement. Williams, 396 F.3d

9

at 1342 n.2 (citing United States v. White, 307 F.3d 336, 343 (5th Cir. 2002)) ("[A]n ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."). The standard for evaluating ineffective assistance of counsel claims was set forth in Strickland v. Washington, 466 U.S. 668 (1984). The analysis is two-pronged, and the court may "dispose of ineffectiveness claims on either of its two grounds." Atkins v. Singletary, 965 F.2d 952, 959 (11th Cir. 1992); see also Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Pimental must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The Court must be "highly deferential," and must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "To overcome Strickland's presumption of reasonableness, [Movant] must show that 'no competent counsel would have taken the action that his counsel did take.'" Allen v. Secretary, Florida

10

Dep't of Corr., 611 F.3d 740, 751 (11th Cir. 2010) (quoting Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

The Strickland standard also applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). Where, as here, a defendant charges that his guilty plea was obtained as a result of the ineffective assistance of counsel, he must show that the advice that he received "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 57, 59.

Pimental's claim that his counsel did not effectively explain his sentence exposure is not supported by the record. Pimental was informed, both in the plea agreement and during his plea colloquy, that he could receive any sentence up to and including life imprisonment. During the plea colloquy, Pimental himself denied that he had been promised any sentence or specific guideline range.

The plain language of the plea agreement informed Pimental that he was subject to a statutory minimum of ten years' imprisonment and a maximum of life imprisonment. (Doc. 875 at ¶ 3). Pimental was again advised of his maximum sentence exposure during the plea colloquy. (Doc. 1385 at 12-13). At that time, the

11

Court also confirmed with the prosecutor that Pimental had been informed of the maximum penalties. (Doc. 1385 at 15).

Pimental's plea agreement also stated that "[t]he defendant also understands that no one can predict his exact sentence at this time." (Doc. 875 at ¶ 3). During the plea colloquy, Pimental denied that he was ever advised of any specific sentence or promise of leniency in connection with his plea:

> THE COURT: Thank you. As to both of you, has anyone made you any promises of leniency, a particular sentence or a light sentence or a concurrent sentence, probation, or held out to you any inducement of any kind to get you to plead guilty? Mr. Pimental?
>
> PIMENTAL: No
>
> * * *
>
> THE COURT: Have you been told by anyone what sentence this Court would actually impose in the event you pled guilty to Count One or Count Thirteen of this indictment?  Mr. Pimental?
>
> PIMENTAL: No.

(Doc. 1385 at 18).  Pimental's counsel, Patrick A. Powell, represented to the Court that he had not advised Pimental that a specific sentence would be imposed:

> THE COURT: Has either of you given your client any indication what sentence this Court would impose in the event he or she pled guilty to Counts One or Thirteen of this indictment? Mr. Duponte?
>
> MR. DUPONTE: No, Your Honor, I have not.

12

>THE COURT: Mr. Powell?
>
>MR. POWELL: No, Your Honor.

(Doc. 1385 at 27). Pimental himself represented to the Court that he understood that a sentence could not be determined until after the preparation of a pre-sentence report. (Id. at 19). In his Section 2255 motion, Pimental presents no evidence to undermine the veracity of the statements made during the plea colloquy.

"[T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Based upon the record, it is clear that Pimental understood, at the time he entered his plea, that he was not guaranteed a sentence based only upon 294 grams of methamphetamine. Pimental was repeatedly told that the Court could impose any sentence up to and including life imprisonment. Thus, Pimental has failed to establish that counsel's actions were unreasonable or that, but for counsel's actions in negotiating the plea agreement, Pimental would not have pleaded guilty.

13

Even if Mr. Powell had incorrectly advised Pimental about the amount of drugs that would be attributed to Pimental at sentencing, Pimental cannot show that he suffered any prejudice as a result: Pimental's 108-month sentence is significantly shorter than his potential maximum sentence of life imprisonment. Teague v. United States, No. 1:06-cr-0355-TWT-GGB, 2009 WL 3112014, at *4 (N.D. Ga. Sept. 25, 2009)(holding that defendant had not been prejudiced where "[m]ovant's 188-month sentence was much lower than the 480-month possible maximum sentence") (citing United States v. Bradley, 905 F.2d 359, 360 (11th Cir. 1990) (finding that counsel's incorrect calculation of defendant's sentence and offense level "did not warrant withdrawal of the guilty plea where Bradley acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed")); Cruz v. United States, 188 F. App'x 908, 914 (11th Cir. 2006) (declining to find prejudice where the court had informed the defendant of "the maximum penalties and that the sentence imposed could be different from any estimate given to her by her lawyer or anyone else"); and Stewart v. United States, 1:07-cv-3045-TWT, 2009 WL 909547, at *10-11 (N.D. Ga. April 2, 2009) (rejecting ineffective assistance claim based on counsel's incorrect calculation of the Sentencing Guidelines where defendant was informed during plea colloquy of

14

the maximum penalties and stated that no sentence had been promised to him). Accordingly, Pimental has failed to make the requisite showing of prejudice to sustain a claim of ineffective assistance of trial counsel.

### B. Ineffective Assistance of Appellate Counsel

Pimental also claims that his appellate counsel was ineffective for failing to argue that (1) his plea was involuntary, (2) unreliable evidence was used at his sentencing, and (3) the district court erred in attributing the additional 8 pounds of methamphetamine to him. (Def.'s Br. at 23-26). A defendant has the right to assistance of counsel in his direct appeal. Evitts v. Lucey, 469 U.S. 387, 392, 397-99 (1985). The effectiveness of appellate counsel is governed by the Strickland standard. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991) (citing Strickland, 466 U.S. at 668). As set forth above, Pimental's claims with respect to his sentencing are barred by his appeal waiver, and the claim that his plea was involuntary is not supported by the record. Appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984).

### C. Reasonableness of Sentence

Pimental also argues that his sentence was unreasonable because he only acknowledged responsibility for 294 grams of methamphetamine. (Doc. 1468 at 48-51). This argument is precluded by Pimental's valid sentence-appeal waiver. See e.g., United States v. Martinez-Barrera, 348 F. App'x 533 (11th Cir. 2009) (holding general appeal waiver broad enough to encompass a reasonableness challenge); United States v. Hernandez-Zaldivar, 342 F. App'x 571 (11th Cir. 2009) (declining to review sentence for reasonableness based on broadness of valid sentence appeal waiver).

## IV. CERTIFICATE OF APPEALABILITY

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See

16

Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Pimental has failed to make a substantial showing of the denial of a constitutional right. Pimental waived his right to collaterally attack his sentence, and his grounds for relief not barred by the waiver are otherwise without merit. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

## V.   CONCLUSION

Based on the foregoing, **I RECOMMEND** that Movant Jose Luis Pimental's motion to vacate sentence [Doc. 1468] be **DENIED**, and that he be **DENIED** a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO RECOMMENDED**, this 14th day of September, 2011.

_____
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)